IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **CLASSIC INK, INC.,** a Texas Corporation, | § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. **3:09-CV-784-L** |
| **TAMPA BAY ROWDIES,** a soccer sports team franchise, **CITRUS SPORTS GROUP LLC,** a Delaware limited liability company, **CITRUS VENTURES,** a venture firm operating in Massachusetts, **TEAM IP HOLDINGS, LLC,** a Florida corporation, **RANDALL SPARKS,** a resident of Florida, | § § § § § § § § § § § | |
| Defendants. | § § | |
| **CITRUS SPORTS GROUP LLC,** a Delaware limited liability company, | § § § | |
| Third-Party Plaintiff, | § § | |
| v. | § § | |
| **CHRISTIAN ANDERSON,** | § § | |
| Third-Party Defendant. | § § | |
| **CHRISTIAN ANDERSON,** | § § | |
| Third-Party Plaintiff, | § § | |
| v. | § § | |
| **JEFF HENDERSON,** **ADAM WALTERSCHEID,** and **CLASSIC INK, INC.,** a Texas Corporation, | § § § § | |
| Third-Party Defendants. | § § | |

**Memorandum Opinion and Order – Page 1**

**MEMORANDUM OPINION AND ORDER**

Before the court is Classic Ink, Inc., Jeff Henderson, and Adam Walters[c]heid['s]* Motion to Dismiss Third Party Claims (the "Motion"), filed August 3, 2009. After careful consideration of the Motion, response, reply, briefs, record, attachments to the original complaint, and applicable law, the court **grants** the Motion.

I.  **Factual and Procedural Background**

Plaintiff Classic Ink, Inc. ("Classic Ink") filed its original complaint in this court on April 29, 2009, against several Defendants, on the jurisdictional basis that this case involves a federal question arising under the Constitution of the United States and that complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. Classic Ink filed its amended complaint on June 4, 2009, alleging trademark infringement, false designation and description of a trademark, tortious interference with a prospective contract, unfair competition, and a request for declaratory judgment. One group of Defendants, including Citrus Group LLC ("Citrus Group"), filed their answer to the amended complaint on June 22, 2009. Along with the answer, Citrus Group filed a third party complaint, adding Christian Anderson ("Anderson") to this action as a third party defendant. Citrus Group's third party complaint alleges breach of contract, fraud, negligent misrepresentation, and a request for contribution.

Anderson filed his answer to Citrus Group's third party complaint on July 14, 2009, and also included his own third party complaint against Classic Ink and two additional third party defendants,

---

*Defendant Adam Walterscheid's last name is misspelled on the docket sheet as "Walterscheild." The correct spelling of his last name should be "Walterscheid." **The clerk of the court is directed to amend the docket sheet to reflect the correct spelling of Defendant Adam Walterscheid's last name.**

**Memorandum Opinion and Order – Page 2**

Jeff Henderson ("Henderson") and Adam Walterscheid ("Walterscheid") (collectively with Classic Ink, the "Printing Defendants"). Anderson's third party complaint alleges breach of contract, fraud, negligent misrepresentation, and a request for contribution and indemnity.

Over the past decade, Anderson acquired and registered many marks with the United States Patent and Trademark Office, including the mark TAMPA BAY ROWDIES (the "'164 Mark"), which is the subject of this action. This action arises out of a trademark infringement claim concerning the '164 Mark brought by Classic Ink, a company that Anderson originally incorporated with the Texas Secretary of State on September 27, 2001, under the name "C.S. Anderson Enterprises, Inc." Am. Compl. Ex. 1. Anderson registered the '164 Mark as a federal trademark on August 26, 2003, and assigned it to C.S. Anderson Enterprises, Inc. *Id.* Ex. 9. When Anderson made this assignment, the '164 Mark became a company asset and was no longer owned by Anderson in his individual capacity. *See id.* Anderson, however, still served on C.S. Anderson Enterprises, Inc.'s board of directors along with Carolyn Anderson and Mark Scott ("Scott"). *See id.* Ex. 4. at 3 ¶ 3.2(c).

As of December 22, 2005, the only outstanding, issued stock in C.S. Anderson Enterprises, Inc. were 1500 shares, 1000 of which were held by Anderson and 500 of which were held by Scott. *See id.* Ex. 4. On that date, Anderson and Scott entered into a Stock Purchase Agreement (the "Agreement") with Henderson and Walterscheid. *See id.* The Agreement required Anderson and Scott to sell their combined 1500 shares of company stock to Henderson and Walterscheid in equal shares, giving Henderson and Walterscheid a combined 100% ownership of C.S. Anderson Enterprises, Inc. *See id.* Ex. 4 at 2 ¶¶ 1.1, 1.2. Anderson and Scott complied with the Agreement's terms, which called for only a transfer of *stock* in the company; all of the company's *assets* were

**Memorandum Opinion and Order – Page 3**

retained by C.S. Anderson Enterprises, Inc. *Id.* Ex. at 5 ¶¶ 4.4, 4.5. Following the signing of the Agreement, the directors on the company's board, including Anderson, resigned their posts, ending any legal interest they held in C.S. Anderson Enterprises, Inc. *See id.* Ex. 6. On March 3, 2006, the corporate name of C.S. Anderson Enterprises, Inc. was changed to Classic Ink, Inc., and the company's registered agent was identified as Adam Walterscheid. *Id.* Ex. 7.

Anderson's third party complaint alleges multiple claims against Printing Defendants arising out of the Agreement, including breach of the royalties provision, breach of the option to purchase shares provision, and breach of the corporate name provision. Anderson further contends that he is entitled to contribution and indemnity for any claims against him, including attorney's fees. The jurisdictional basis set forth in Anderson's third party complaint rests in the court's supplemental jurisdiction under the provisions of 28 U.S.C. § 1367(a). Printing Defendants challenge Anderson's third party complaint in their Motion pursuant to multiple provisions of the Federal Rules of Civil Procedure: Rule 9(b) for failure to allege fraud with the requisite specificity, Rule 12(b)(1) for lack of subject matter jurisdiction, Rule 12(b)(6) for failure to state a claim upon which relief can be granted, and Rule 14(a)(4) to strike Anderson's third party complaint from these proceedings.

## II.  **Legal Standard**

The plain language of Rule 14(a) allows a third party defendant to bring "any claim" against the original plaintiff, so long as the claim arises from the "same transaction or occurrence" that is the subject matter of the plaintiff's original claim. *See* Fed. R. Civ. P. 14(a). Therefore, if Anderson's claims meet the "same transaction" requirement, the claims "should be allowed, despite [their] label." 6 Charles A. Wright et al., Federal Practice and Procedure § 1458 (2d ed. 2009). Entirely separate and independent claims, however, cannot be maintained against a third party under

Rule 14, even though they arise out of the same general set of facts as the main claim. *United States v. Joe Grasson & Son, Inc.*, 380 F.2d 749, 751 (5th Cir. 1967). The third party claims must be "so related to claims in the action within such original jurisdiction [of the court] that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

To meet the Rule 14(a) requirements, the third party defendant must "demonstrate that his grievance involves some of the same evidence, facts, and issues as does the original action." 6 Charles A. Wright et al., Federal Practice and Procedure § 1458. Such claims do not need an independent ground for federal subject matter jurisdiction because they arise from the same set of operative facts as the original claim. *See Revere Copper & Brass, Inc. v. Aetna Cas. & Sur. Co.*, 426 F.2d 709, 710, 713 (5th Cir. 1970).

### III.   Analysis

Anderson bring multiple claims in this action against Printing Defendants for breach of contract, fraud, and negligent misrepresentation. He also requests contribution and indemnity from Printing Defendants. The court will first consider Anderson's claims and then consider his request for contribution and indemnity.

#### A.   Anderson's Claims

##### 1.   Subject Matter Jurisdiction Under Rule 12(b)(1)

Printing Defendants' principal argument is that Anderson's claims do not fall within the subject matter jurisdiction of this court because they are not "so related to claims in this action" so as to form "part of the same case or controversy" pursuant to 28 U.S.C. § 1367(a). Accordingly, Printing Defendants contend that the court cannot exercise its supplemental jurisdiction over the

claims brought by Anderson. In response, Anderson establishes that the court has original jurisdiction over the claims in this case, and contends that no independent jurisdictional basis has to exist for his third party claims. The court does not dispute this. Anderson further responds that his third party claims are essential to the claims at issue in this case because they affect the rights, duties, and potential breaches of the Agreement, which could indemnify or mitigate any damages for Anderson.

The original complaint in this case sets forth multiple claims that concern trademark infringement, specifically with regard to the '164 Mark. It follows then that the key issues in this case center around the parties' property and ownership interests in that mark. Citrus Group, one of the Defendants against whom Classic Ink's complaint is directed, brought a third party complaint against Anderson as an ancillary defense in this matter, contending that Anderson misled Citrus Group into believing that he was the owner of C.S. Anderson Enterprises, Inc. in 2008 and that he fraudulently assigned the '164 Mark to Defendants. Citrus Group's third party complaint goes directly to the key issues in this matter of establishing property and ownership interests in the '164 Mark, evidencing that it believed it legally acquired the '164 Mark from Anderson, who in actuality had no property or ownership interest in the mark. Anderson's own third party complaint against Printing Defendants would make sense if it went to those same key issues, such as to show that he truly believed he held a legitimate property or ownership interest in the '164 Mark when he made the assignment to Citrus Group. Anderson's claims, however, provide no such indication.

Anderson merely alleges that he "never intended to sell all interests he had in every trademark or website address that he had ever acquired" when he signed the Agreement with Henderson and Walterscheid. Anderson's Third-Party Compl. at 11 ¶ 14. Even if this intention

allowed Anderson to retain a property interest in some of his trademarks and website addresses, that interest did not extend to the '164 Mark, made clear by the attachments to Classic Ink's complaint. Anderson registered the '164 Mark on August 26, 2003, and assigned the mark to C.S. Anderson Enterprises, Inc. on the same day. Am. Compl. Ex. 9. On December 22, 2005, Anderson and Scott sold all of C.S. Anderson Enterprises, Inc.'s outstanding, issued stock to Henderson and Walterscheid. *Id.* Ex. 4. Immediately following the Agreement, all of the directors on C.S. Anderson Enterprises, Inc.'s board, including Anderson, resigned their posts. *Id.* Ex. 6. The goodwill and trademark registrations owned by the company, including the '164 Mark, remained the corporate assets of C.S. Anderson Enterprises, Inc. *Id.* Ex. 4 at 5 ¶¶ 4.4, 4.5. On March 3, 2006, the corporate name of C.S. Anderson Enterprises, Inc. was changed to Classic Ink, Inc. *Id.* Ex. 7. The president, vice president, treasurer, secretary, and directors of Classic Ink are positions held exclusively by Henderson and Walterscheid. *Id.* Ex 8. Anderson no longer holds any property or ownership interest in the company, nor does he hold any property or ownership interest in the corporate assets of the company. Furthermore, he did not own the '164 Mark when he signed the Agreement, the *company* did. Whatever property interest Anderson once held in the '164 Mark was lost when he sold off his stock ownership of the company and resigned from his position as director.

In light of the above, the court determines that Anderson's claims do not go to resolving the key issues at the center of this action. Even if the court were to presume that Printing Defendants' alleged "breaches" amounted to a voidance of the entire contract, as Anderson contends they do, this would not change anything concerning the ownership of the '164 Mark, which indisputably was a corporate asset of the *company*. The court accordingly determines that Anderson's claims have no impact on discerning the ownership rights to the '164 Mark and that, in the absence of such

ownership, Anderson allegedly made an assignment to Citrus Group of the '164 Mark that was not his to make, regardless of his pending claims against Printing Defendants. Any evidence that Anderson would produce on the matter of establishing breach by Printing Defendants would not overlap with the other evidence produced in this case concerning the trademark infringement issues, nor would Anderson's evidence assist in resolving those issues. In other words, Anderson's claims are not "so related to claims in this action" so as to form "part of the same case or controversy." 28 U.S.C. § 1367(a). The court therefore lacks supplemental jurisdiction over the claims brought by Anderson.

### 2.     Rule 12(b)(6) and Rule 9(b) Challenges

Printing Defendants also challenge Anderson's claims on Rule 12(b)(6) and Rule 9(b) grounds. Because the court determines that it lacks subject matter jurisdiction over Anderson's claims, these contentions are moot and the court will not consider them.

### B.     Anderson's Request for Contribution and Indemnity

Anderson alleges that he is entitled to contribution and indemnity from Printing Defendants to the extent that they are responsible for Classic Ink's alleged damages. The court finds that this goes without saying. To the extent that Classic Ink is responsible for its own damages, Anderson should not have to contribute to those damages. Anderson alternatively argues that he is entitled to indemnity from Printing Defendants pursuant to Paragraph 8.2(b) of the Agreement with Henderson and Walterscheid. This provision reads as follows:

> [T]he Purchasers agree to indemnify the Sellers against, and agree to hold Sellers harmless from any and all losses incurred or severed by the Sellers (including costs or attorney's fees) arising out of any claim relating to the operation of the Corporation after the closing of the transaction contemplated by this Agreement; including, without limitation, debts due attorney Hemingway or to Fluid.

Am. Compl. Ex. 4 at 9 ¶ 8.2(b).

This provision expressly states that indemnity is only appropriate concerning losses "arising out of any claim *relating to the operation of the Corporation . . . .*" *Id.* (emphasis added). Citrus Group's third party complaint against Anderson alleges nothing about the corporate operations of Classic Ink; instead it relates exclusively to the alleged unauthorized and personal wrongdoings of Anderson. Accordingly, the court determines that the indemnity provision of the Agreement does not apply to the claims in this case.

## IV.   Conclusion

For the reasons stated herein, the court determines that it lacks supplemental jurisdiction over Anderson's third party claims. Accordingly, the court **grants** Classic Ink, Inc., Jeff Henderson, and Adam Walters[c]heid['s] Motion to Dismiss Third Party Claims. Anderson's claims are **dismissed without prejudice** pursuant to Rule 12(b)(1) for want of subject matter jurisdiction. The court further **determines** that Anderson is not entitled to indemnity in this matter under Paragraph 8.2(b) of his Agreement with Henderson and Walterscheid.

**It is so ordered** this 20th day of January, 2010.

Sam A. Lindsay
United States District Judge