IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **CLASSIC INK, INC.,** a Texas Corporation, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. **3:09-CV-784-L** |
| | § | |
| **TAMPA BAY ROWDIES,** | § | |
| a soccer sports team franchise, | § | |
| **CITRUS SPORTS GROUP LLC,** | § | |
| a Delaware limited liability company, | § | |
| **CITRUS VENTURES,** | § | |
| a venture firm operating in Massachusetts, | § | |
| **TEAM IP HOLDINGS, LLC,** | § | |
| a Florida corporation, | § | |
| **RANDALL SPARKS,** | § | |
| a resident of Florida, | § | |
| | § | |
| Defendants. | § | |
| _____ | § | |
| | § | |
| **CITRUS SPORTS GROUP LLC,** | § | |
| a Delaware limited liability company, | § | |
| | § | |
| Third-Party Plaintiff, | § | |
| v. | § | |
| | § | |
| **CHRISTIAN ANDERSON,** | § | |
| | § | |
| Third-Party Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is [Third-Party] Defendant Christian Anderson's Motion to Disqualify Plaintiffs' Counsel D. Scott Hemingway (the "Motion"), filed October 12, 2009. After considering the Motion, response, reply, briefs, appendices, arguments and evidence presented in open court, record, and applicable law, the court **denies** the Motion.

**Memorandum Opinion and Order – Page 1**

Christian Anderson ("Anderson") is a third-party defendant in this trademark infringement action; he was added as a party to this lawsuit by Defendant Citrus Sports Group LLC ("Citrus Group"), who filed a third-party complaint against him on June 22, 2009.  When Anderson filed an answer in response to Citrus Group's third-party complaint on July 14, 2009, he also filed a counterclaim and his own third-party complaint against Plaintiff Classic Ink, Inc., f/k/a C.S. Anderson Enterprises, Inc. ("Classic Ink"), Jeff Henderson ("Henderson"), and Adam Walterscheid. On January 20, 2010, the court dismissed all of Anderson's claims for want of subject matter jurisdiction.  There are no remaining claims pending in this action between Anderson and Classic Ink.

Classic Ink's claims against Citrus Group arise from Citrus Group's alleged misappropriation of the TAMPA BAY ROWDIES trademark (the "Mark") held by Classic Ink.  As part of its defense, Citrus Group alleges that, before it began using the Mark in May 2008, Anderson represented that he owned the Mark and had the authority to sell, and did sell, the Mark to Citrus Group.  Citrus Group's claims against Anderson arise from that purported sale and consist of breach of contract, fraud, and negligent misrepresentation.  D. Scott Hemingway ("Hemingway"), counsel for Classic Ink, was the attorney who originally assisted Anderson in acquiring the Mark in October 2001. Hemingway later assisted Anderson in assigning the Mark to C.S. Anderson Enterprises, Inc. in December 2001.  On March 3, 2006, the corporate name of  C.S. Anderson Enterprises, Inc. was changed to Classic Ink, Inc., the plaintiff in this lawsuit.

Anderson contends that Hemingway should be disqualified from this action because of Anderson's status as Hemingway's former client.   Anderson states that an attorney-client relationship existed with Hemingway because he retained Hemingway in 2001 as his personal

attorney for assistance with "various intellectual property and corporate matters." Anderson's App. 21 ¶ 3. Hemingway states that he never represented Anderson "in a 'personal,' non-business related matter of any kind." Pl.'s App. 2 ¶ 9. Instead, Hemingway avers that he was retained "only in [the] capacity as business counsel for C.S. Anderson Enterprises, Inc." *Id.* ¶ 10.

The court held a hearing regarding the Motion on July 2, 2009, and heard testimony from Anderson and Hemingway. The testimony revealed that Anderson and Hemingway were acquaintances for several years prior to 2001. In the late 1990s, Anderson was actively involved in acquiring sports team trademarks and developing T-shirt designs bearing those trademarks for sale over the Internet. Although Anderson initially attempted to register trademarks at the United States Patent and Trademark Office himself, he soon discovered that he needed the assistance of legal counsel to complete such complicated tasks. That is when he sought Hemingway, a friend of his wife from college and known trademark attorney.

The business matters discussed by Hemingway and Anderson at their first meeting on September 13, 2001, concerned creating and incorporating the business entity C.S. Anderson Enterprises, Inc. (the "Entity") and registering trademarks assignable to that Entity. Articles of Incorporation for the Entity were executed and transmitted twelve days later, on September 25, 2001. It is undisputed that Hemingway performed legal work on behalf of the Entity during the time period that Anderson retained him and that Hemingway's legal representation solely concerned business matters at the directive of Anderson. It is not so clear, however, that the extent of Hemingway's legal representation excluded personal representation of Anderson.

Cases involving disqualification of counsel "are governed by state and national ethical standards adopted by the court." *In re Am. Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992). This

court has adopted the Texas Disciplinary Rules of Professional Conduct.[1]   *See* N.D. Tex. Loc. R. 83.8(e).   When a party moves to disqualify an attorney for prior representation, as here, the controlling law directs the court to apply a "substantial relationship" test.   *In re Am. Airlines, Inc.*, 972 F.2d at 614; *see* Tex. Disciplinary R. Prof'l Conduct 1.09(a)(3).   Under this test, disqualification is appropriate when two elements are established: "(1) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify and (2) a substantial relationship between the subject matter of the former and present representations."   *In re Am. Airlines*, 972 F.2d at 614 (collecting cases).   Hemingway disputes the existence of both elements.

As discussed, it is not readily apparent whether an attorney-client relationship existed between Hemingway and Anderson in a personal capacity.   Although a corporate attorney generally represents the corporation (as opposed to its shareholders), "the issue of attorney-client relationship becomes more complicated in the case of a small closely-held corporation."   *United States v. Edwards*, 39 F. Supp. 2d 716, 731-32 (M.D. La. 1999).   "[W]hether the attorney represented the individual of the small closely-held corporation is fact-intensive and must be considered on a case-by-case basis."   *Id.* at 732 (citations omitted).   Here, Anderson was the sole shareholder, employee, and president of the Entity when it was formed.   The Entity never grew significantly in size and eventually came to include a three-person Board of Directors, consisting of Anderson, his wife

---

[1] The court notes that "the Texas Rules 'are not the sole authority governing a motion to disqualify.'" *In re ProEducation Int'l, Inc.*, 587 F.3d 296, 299 (5th Cir. 2009) (quoting *In re Am. Airlines*, 972 F.2d at 610). A reviewing court in this district must also consider the ABA Model Rules of Professional Conduct. *See id.* With respect to Rule 1.09 of the Texas Rules and its Rule 1.9 analog in the Model Rules, however, the application of each rule produces the same result. *See id.* at 301. The court accordingly will advance its Rule 1.09 analysis only under the Texas Rules.

**Memorandum Opinion and Order – Page 4**

Carolyn Anderson, and fellow shareholder Mark Scott.[2]  At all times, the Entity fit the profile classification of a closely-held corporation, and it status as a closely-held corporation is undisputed by the parties.

The record and hearing testimony make clear that Anderson sought Hemingway because he knew Hemingway, trusted him, and needed legal assistance to help carry on his Internet sales activities.  Although Anderson ultimately gave Hemingway approval to incorporate the Entity, it is apparent that incorporating the Entity was Hemingway's legal opinion and advice, which Anderson admittedly accepted and authorized, but not originally Anderson's idea.  Hemingway testified that all of the legal work he performed was at the behest of his "client," referring to Anderson.  That Hemingway, on the one hand, would call Anderson his client and, on the other hand, maintain the position that he never had an attorney-client relationship with Anderson does not square.  As it is uncontroverted that the Entity did not exist at the time Anderson first met with and retained Hemingway, the court determines that, at best, Hemingway has demonstrated that he jointly represented Anderson and the Entity.  Moreover, given their prior acquaintanceship and the absence of any documentation or contract narrowing Hemingway's representation solely to the Entity, it was reasonable for Anderson—as well as an objective third-party observer—to assume that Hemingway represented him and not just the Entity.  Accordingly, the court concludes that Anderson has satisfied the first element of the "substantial relationship" test.  An actual attorney-client relationship existed between Anderson and Hemingway.

The court now turns to the second element, whether there is a substantial relationship between the subject matter of the former and present representations.  Anderson argues that the

---

[2]On December 22, 2005, Anderson sold all of his interest in the Entity and resigned his position on the Board.  He is no longer legally connected to the Entity in any way.

**Memorandum Opinion and Order – Page 5**

matters are substantially related because, in the prior representation, Hemingway acquired the Mark for Anderson and assisted him in assigning it to the Entity.  In this action, ownership of the Mark is at the center of the dispute between Classic Ink, Citrus Group, and Anderson as a third-party defendant.

The Texas Supreme Court has held that "two matters are 'substantially related' within the meaning of Rule 1.09 [of the Texas Disciplinary Rules of Professional Conduct] when a genuine threat exists that a lawyer may divulge in one matter confidential information obtained in the other because the facts and issues involved in both are so similar." *In re EPIC Holdings, Inc.*, 985 S.W.2d 41, 51 (Tex. 1998).  Anderson relies heavily on an "irrebuttable presumption" that he contends necessitates Hemingway's disqualification.  As stated by the Fifth Circuit in *American Airlines*, "[o]nce it is established that the prior matters are substantially related to the present case, the court will irrebuttably presume that relevant confidential information was disclosed during the former period of representation."  972 F.2d at 614.  Here, however, Anderson has identified no "genuine threat" that Hemingway would divulge confidential information obtained from the prior representation.  Anderson has not even alleged that Hemingway is in possession of confidential information that would be potentially damaging if divulged in this action.

As stated, the related matters from the prior representation involved Hemingway's acquisition of the Mark on Anderson's behalf and Anderson's eventual assignment of that Mark to the Entity.  Now, in this action, ownership of the Mark is what the parties contest, and the court struggles with the notion that Hemingway possesses confidential information relating to the Mark's acquisition and assignment.  It is no secret that Hemingway acquired the Mark and that Anderson assigned it; such actions were precisely the reason that Anderson retained Hemingway.  Moreover,

such actions are now matters of public record.  The court does not believe that Hemingway could

reveal any information relating to those matters that are not already known to the parties through

their discovery.

In light of the Texas Supreme Court's definition of "substantially related," the court is not

satisfied that Anderson has established the second element of the "substantial relationship" test;

Anderson, as the movant, has fallen short of his burden.  Because the second element has not been

established, the "substantial relationship" test necessarily fails.  The court therefore precludes

application of the *American Airlines* "irrebuttable presumption" regarding presumed disclosure of

confidential information.

Although the driving thrust behind Anderson's motion is his argument advanced under Rule

1.09, which the court has analyzed above, Anderson makes an oblique reference in a footnote to the

possibility of Hemingway being called as a fact witness in this case.  Anderson's Mot. 8, n.1.  As

Rule 3.08 of the Texas Disciplinary Rules of Professional Conduct provides:

> (a) A lawyer shall not accept or continue employment as an advocate
> before a tribunal in a contemplated or pending adjudicatory
> proceeding if the lawyer knows or believes that the lawyer *is or may
> be* a witness necessary to establish an essential fact on behalf of the
> lawyer's client unless:
>
>   (1) the testimony relates to an uncontested issue;
>
>   (2) the testimony will relate solely to a matter of formality and
>   there is no reason to believe that substantial evidence will be
>   offered in opposition to the testimony;
>
>   (3) the testimony relates to the nature and value of legal services
>   rendered in the case;
>
>   (4) the lawyer is a party to the action and is appearing pro se; or

**Memorandum Opinion and Order – Page 7**

> (5) the lawyer has promptly notified opposing counsel that the lawyer expects to testify in the matter and disqualification of the lawyer would work substantial hardship on the client.
>
> . . .

Tex. Disciplinary R. Prof'l Conduct 3.08 (emphasis added). Here, the court determines that there is a likelihood that Hemingway will be called as a fact witness in this case because he possesses personal knowledge of the Mark's original acquisition and subsequent assignment. In addition, the declarations of Hemingway and Henderson, included in the appendix to Classic Ink's response, state that Hemingway, Henderson, and Anderson took part in a phone conversation on April 29, 2009. *See* Pl.'s App. Ex. 1 ¶¶ 19-20, Ex. 2 ¶¶ 4-7. In this phone conversation, Hemingway informed Anderson that he did not represent him and that Anderson needed to obtain separate counsel. After Hemingway's disclaimer, Anderson purportedly made incriminating statements of liability. It is apparent from the declarations that Hemingway participated in this phone conversation, and the court believes there is a likelihood that he will be called to provide testimony relating to what was said in that conversation. Anderson's defensive posture in this lawsuit suggests that he would heavily contest such testimony.

Of Rule 3.08's five enumerated exceptions, however, Hemingway's prospective testimony would not fall under the first four, as his testimony would not concern the amount of legal fees, would not constitute a "mere formality" or uncontested issue, and Hemingway is not a party to this action. As Hemingway alluded to at the hearing, however, Classic Ink could suffer a substantial hardship if the court goes forward with disqualification. As the Texas Supreme Court has stated, "that a lawyer serves as both an advocate and a witness does not in itself compel disqualification." *In re Sanders*, 153 S.W.3d 54, 57 (Tex. 2004). "Consequently, the party requesting disqualification must demonstrate that the opposing lawyer's dual roles as attorney and witness will cause the party

actual prejudice." *Id.* (citing *Ayres v. Canales*, 790 S.W.2d 554, 558 (Tex. 1990)); *see* Tex. Disciplinary R. Prof'l Conduct 3.08, cmt. 10 ("[Rule 3.08] may furnish some guidance in those procedural disqualification disputes where the party seeking disqualification can demonstrate actual prejudice to itself resulting from the opposing lawyer's service in the dual roles.").

In keeping with the court's above analysis, Anderson has alleged nothing relating to confidential information known by Hemingway that could be damaging to Anderson if divulged in this action. The two key issues that connect Hemingway's prior representation to this case are Anderson's acquisition of the Mark and Anderson's assignment of that Mark to the Entity, both of which are matters of public record and not confidential. The court determines that Anderson has made no showing of prejudice or assertion of prospective harm arising from Hemingway's continued representation of Classic Ink.[3] Disqualification is therefore inappropriate. "Without these limitations, the rule could be improperly employed as a tactical weapon to deprive the opposing party of the right to be represented by the lawyer of his or her choice." *In re Sanders*, 153 S.W.3d at 58 (quotations and citation omitted).

Moreover, there are no claims pending in this action between Classic Ink and Anderson. Despite Anderson's contentions, Classic Ink (and by extension, Hemingway) is not an adverse party to Anderson in this case. This serves as an additional basis supporting the court's decision not to disqualify. Classic Ink's dispute is with Citrus Group, and Citrus Group's dispute is with Anderson.

---

[3]Furthermore, it appears that any facts that Hemingway might be called upon to establish at trial could be established through other witnesses or exhibits, rendering Hemingway's potential testimony duplicative and unnecessary. *See In re Sanders*, 153 S.W.3d at 58 ("Disqualification is only appropriate if the lawyer's testimony is "'*necessary* to establish an essential fact.'" ) (quoting Tex. Disciplinary R. Prof'l Conduct 3.08(a)) (emphasis added).

**Memorandum Opinion and Order – Page 9**

Hemingway's continued representation of Classic Ink has no impact on Anderson's ability to defend in this action against Citrus Group.

Accordingly, as Anderson has fallen short of his burden to demonstrate prejudice or a genuine threat of Hemingway divulging damaging confidential information if not disqualified, and as no controversy exists between Anderson and Classic Ink, the court **denies** [Third-Party] Defendant Christian Anderson's Motion to Disqualify Plaintiffs' Counsel D. Scott Hemingway.

**It is so ordered** this 23rd day of July, 2010.

Sam A. Lindsay
United States District Judge